BALTRAMIEUS STOCKUS & others *vs.* BOSTON HOUSING
AUTHORITY.

Suffolk.   November 16, 1939. — December 15, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Housing Authority Law.   Constitutional Law,* Police power, Housing.
*Equity Jurisdiction,* To enjoin acts of public officer.   *Equity Pleading
and Practice,* Demurrer.

The housing authority law, §§ 26I–26II, inserted in G. L. (Ter. Ed.)
c. 121 by St. 1938, c. 484, § 1, is constitutional.   Following *Allydonn
Realty Corp.* v. *Holyoke Housing Authority, ante,* 288.

A demurrer properly was sustained to a bill in equity to prevent the
enforcement of an order of taking by a municipal housing authority
of land for the purposes of clearing it as a substandard area and pro-
viding low rent housing thereon where the averments did not require
a conclusion that the acts of the authority were in excess of their powers
under the housing authority law or arbitrary or in bad faith, but were
merely averments in substance that the authority's discretionary
determination that the land was a substandard area within the statute
was wrong; furthermore, the authority had power under the statute
to take land for the construction of housing even though it was not
a substandard area.

A demurrer in equity does not admit a conclusion from alleged facts
unless it is a necessary one.

A conclusion of law is not admitted by a demurrer in equity.

BILL IN EQUITY, filed in the Superior Court on June 12,
1939, and afterwards amended.

A demurrer was sustained by *J. W. Morton,* J., who there-
upon reported the suit.

*A. Lincoln,* for the plaintiffs.

*L. H. Weinstein,* Assistant Corporation Counsel, for the
defendants.

RONAN, J.   The bill of complaint alleges that the plain-
tiffs Stockus own a parcel of land with a dwelling thereon
in that portion of Boston known as South Boston, and that
the plaintiff ·Tautvaisa is the owner of a similar parcel in
the same locality;   that the defendants, comprising the
Boston Housing Authority (established by § 26L of the
housing authority law, §§ 26I–26II, inserted in G. L. [Ter.

Ed.] c. 121, by St. 1938, c. 484), have adopted an order taking a certain tract of land, including the parcels owned by the plaintiffs, having determined that the tract constituted a substandard area as defined by § 26J of said housing authority law, and have ordered the plaintiffs to vacate their premises. The plaintiffs do not admit that the said tract is a substandard area, but allege that the said law is unconstitutional. They seek a permanent injunction restraining the defendants from enforcing the alleged order purporting to take their properties. The demurrer of the defendants was sustained in the Superior Court, and the judge reported the case to this court upon the ruling sustaining the demurrer.

Since the argument of this case, it has been decided that the housing authority law has two principal purposes — (1) the elimination of substandard areas or the abolition of slums, and (2) the furnishing of low-rent housing to families of low income; that the expenditure of public funds in a reasonable manner to rid a community of slums could not be said not to be for a public purpose; that the clearance of slums could be found to promote the public safety, health and welfare; that the construction and maintenance of low-rent housing for families of low income would avert hardship to those whose homes have been razed and would prevent overcrowding into other slums; that construction of new low-rent dwellings is not to be undertaken on a larger scale than the number of existing tenements eliminated by the clearance of substandard areas; and that the furnishing of new low-rent housing facilities was the means adopted to accomplish the abolition of slums. The housing authority law was therefore held to be a valid enactment. *Allydonn Realty Corp.* v. *Holyoke Housing Authority, ante,* 288.

The present bill cannot be sustained on the ground that the law is unconstitutional, and we must consider whether the bill sets forth a case where the defendants have exceeded their authority in attempting to take the premises of the plaintiffs, as it is the only remaining ground upon which the bill purports to be based.

The plaintiffs aver that the tract of land that the defendants have purported to take "is not in fact an area wherein dwellings predominate which, by reason of dilapidation, overcrowding, faulty arrangement or design, lack of ventilation, light or sanitation facilities, or any combination of these factors, are detrimental to safety, health or morals." They say on information and belief that the dwellings in this area are in good repair and condition, with reasonable provisions for ventilation, light and sanitation; that there is no overcrowding of tenants; that the dwellings are not detrimental to safety, health and morals; that there is an adequate supply of decent, safe and sanitary dwellings in Boston; that the contemplated construction of new dwellings will require a rental beyond the financial reach of families of low income and will increase the burden of taxation on property owners; and that there is no public exigency requiring the clearance of the area in question.

The allegations concerning the characteristics of the area as enumerated in the bill seek to avoid the classification of the locus as a substandard area by negativing verbatim the various elements included in § 26J in defining a substandard area. While it is true that the specific characteristics enumerated in the bill, some being alleged to be absent and others to be present in the area in question, are in the main physical objects whose presence or absence is a matter of fact, yet it is equally true that the extent that these various elements enter into and form the predominating and distinctive traits of a neighborhood is frequently and largely a matter of opinion and whether such characteristics or some of them, considered all together or in any combination, present a housing situation that in its final analysis may reasonably and fairly be said to be injurious to the public safety, health or morals, is to a great degree a matter of practical judgment, common sense and sound discretion. There are, undoubtedly, instances where men of training and experience in special subjects related to construction, sanitation, fire prevention, zoning, public health, social service and other subjects might honestly differ in determining whether a certain district was a slum area. If the ques-

tion is a debatable one, we have no right to substitute our judgment for that of the defendants acting as the local housing authority, upon whom the Legislature conferred the power "To determine what areas within its jurisdiction constitute sub-standard areas." § 26R (b). *Miller* v. *Fitchburg*, 180 Mass. 32. *Burke* v. *Metropolitan District Commission*, 262 Mass. 70. *Sheldon* v. *School Committee of Hopedale*, 276 Mass. 230. The specific negation of the presence of each of the elements included within the statutory definition of a substandard area, § 26J, adds nothing to the bill. See *Bradley* v. *Zoning Adjustment Board of Boston*, 255 Mass. 160; *Prusik* v. *Board of Appeal of Boston*, 262 Mass. 451, 458.

The allegation that the dwellings in this area are in good repair and condition is not an allegation that the defendants may not reasonably adjudge otherwise. The overcrowding of tenements in a congested area well might be a matter upon which opinions may vary within wide limits. The averment that the buildings are of good arrangement and design for buildings of their class is not the equivalent of an averment of freedom from faulty arrangement or design for dwellings in general and without reference to any classification. That the buildings have "reasonable provision for ventilation, light and sanitation facilities" as alleged, does not show that there is no "lack of ventilation, light or sanitation facilities." Alleging that there is a reasonable provision for such facilities falls short of alleging that the dwellings in the area are in fact equipped with such facilities or that there is such ventilation, light and sanitation as is consistent with the preservation of safety, health or morals. The fact that the dwellings of the plaintiffs have such facilities is immaterial, for the test is the area as a unit and not two dwellings located in the area. Moreover, what the plaintiffs may consider a reasonable provision is no more than a mere opinion on the debatable question as to the extent that the buildings have ventilation, light and sanitation facilities. The allegation that the buildings comply with various statutes and regulations is not admitted by a demurrer. *Pennie* v. *Reis*, 132 U. S.

464. *Nortz* v. *United States*, 294 U. S. 317. The conclusion that the "buildings are not detrimental to safety, health or morals" is not a necessary conclusion from the specific facts alleged, and consequently is not admitted by the demurrer. *Johnson* v. *East Boston Savings Bank*, 290 Mass. 441, 446. *Fleming* v. *Dane*, 298 Mass. 216. *Comerford* v. *Meier*, 302 Mass. 398. In a suit to restrain the enforcement of an ordinance forbidding the storage of gasoline within three hundred feet of any dwelling, it was said that a demurrer did not admit an allegation that the ordinance was unnecessary and unreasonable or an allegation that the plaintiff's plant was safe. There "are limits to the extent to which such an allegation can be accepted." *Pierce Oil Corp.* v. *Hope*, 248 U. S. 498, 500. *Newport News Shipbuilding & Dry Dock Co.* v. *Schauffler*, 303 U. S. 54.

The allegations that the defendants had no authority to make the taking of the properties of the plaintiffs and that such taking is illegal and void are mere conclusions of law which cannot be considered as admitted by the demurrer. *Morin* v. *Ellis*, 285 Mass. 370. *Atlantic Pharmacal Co.* v. *Commissioner of Corporations & Taxation*, 294 Mass. 485. *Pacific States Box & Basket Co.* v. *White*, 296 U. S. 176. *Isbrandtsen-Moller Co. Inc.* v. *United States*, 300 U. S. 139.

The various allegations, in substance and effect, that there was no necessity for the taking, that there was no public exigency requiring the taking, that there was no shortage of adequate and available housing facilities, and that there was no exigency justifying the action of the defendants, are all matters of a legislative nature and are not open to judicial inquiry or review. *Talbot* v. *Hudson*, 16 Gray, 417. *Boston* v. *Talbot*, 206 Mass. 82. *Broderick* v. *Department of Mental Diseases*, 263 Mass. 124.

The good faith of the defendants is not challenged and there is nothing in the bill that alleges arbitrary or capricious action. Every presumption must be indulged in as to the integrity and impartiality of their conduct. *Nevins* v. *City Council of Springfield*, 227 Mass. 538. *MacDonald* v. *Street Commissioners of Boston*, 268 Mass. 288. *Larkin* v. *County Commissioners of Middlesex*, 274 Mass. 437.

The bill does not sufficiently allege that the defendants exceeded their authority or erroneously decided that they had jurisdiction to act. If such a case were presented, it would be necessary to decide whether a bill in equity would lie or whether the remedy would have to be a petition for certiorari or one for mandamus. See *Moneyweight Scale Co.* v. *McBride,* 199 Mass. 503; *Morley* v. *Police Commissioner of Boston,* 261 Mass. 269; *Criscuolo* v. *Department of Public Utilities,* 302 Mass. 438. The plaintiffs have no right to ask the court to substitute its judgment for that of the defendants. The bill does this and no more.

The defendants were acting in their official capacity in determining that the said district was a substandard area as defined by § 26J. In deciding the question they were dealing with a subject matter not shown by the bill to have been beyond their authority, and as it is not alleged that their conduct was arbitrary, capricious or unreasonable, or that they were acting in bad faith, the decree sustaining the demurrer was correct and must be affirmed. *Filoon* v. *City Council of Brockton,* 252 Mass. 218. *Burke* v. *Metropolitan District Commission,* 262 Mass. 70. *Archambault* v. *Mayor of Lowell,* 278 Mass. 327. *Slocum* v. *Medford,* 302 Mass. 251. *Hegeman Farms Corp.* v. *Baldwin,* 293 U. S. 163. *Pacific States Box & Basket Co.* v. *White,* 296 U. S. 176.

The decree sustaining the demurrer can be supported on another ground. The defendants were authorized by § 26R (b) to determine what areas were substandard, to provide low-rent housing projects for families of low income, and to acquire by purchase or by eminent domain any property found by them to be necessary or reasonably required to carry out the purpose of the housing authority law. The order taking the properties of the plaintiffs, as disclosed by the bill, states that the property was taken for the purpose of clearing an area deemed to be a substandard area, and also for the purpose of providing thereon low-rent housing projects for families of low income. The power of the defendants to take land by eminent domain for the purpose of erecting dwellings thereon was not limited to

slum areas.   It was optional with the defendants to clear the substandard area and then to construct new buildings on this area or upon some other site.   § 26CC.   The defendants could take the area within which the properties of the plaintiffs are located for the purpose of constructing new dwellings provided the conditions of the last mentioned section were observed.   Such a taking would be for a public purpose, *Allydonn Realty Corp.* v. *Holyoke Housing Authority, ante,* 288, and, for reasons previously stated, we cannot review the decision of the defendants upon the necessity for the taking for the purpose of furnishing low-rent housing facilities for families of low income.  Moreover, the allegations of the bill, which fully set forth the substance of the order now assailed, show that the taking was made, under a statute that has been held to be valid, for the purpose of erecting new housing facilities upon the lands of the plaintiffs in the exercise of the power properly delegated to the defendants to take whatever property they may deem reasonable and necessary for such purpose.   In other words, laying to one side the original contention that the housing law was unconstitutional, the allegations of the bill fail to show that the injuries of which the plaintiffs complain were not caused by the duly authorized acts of the defendants acting as Housing Authority of Boston created by § 26L. *Pinkham* v. *Chelmsford,* 109 Mass. 225.   *Murray* v. *County of Norfolk,* 149 Mass. 328.   *Barnes* v. *Peck,* 283 Mass. 618. *Klem* v. *Commonwealth,* 301 Mass. 340.

*Decree sustaining demurrer affirmed.*