**Lance WARE**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued Sept. 17, 1981.

Decided Oct. 30, 1981.

Harmon, Jones & Sanford, Robert C. Perkins (orally), Camden, for plaintiff.

James R. Erwin, (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

GODFREY, Justice.

In a Superior Court hearing on Lance Ware's petition for post-conviction relief, the presiding justice found that Ware's parole had been illegally revoked and ordered that he be immediately released from prison. In the State's appeal from that order pursuant to 15 M.R.S.A. § 2131(2) (Supp. 1980–81), the State contends that the presiding justice committed clear error in his determination below. We affirm the judgment.

On December 7, 1978, Lance Ware was paroled from the Maine State Prison on a sentence for robbery. That same day Ware and another known felon were arrested by the Knox County Sheriff's Department on a charge of burglary and related offenses. As a result of his arrest, the Board of Probation and Parole ("the Board") issued an arrest and detention warrant on December 8, 1978, charging Ware with a parole violation. After notice to Ware, a preliminary hearing was held on December 12, 1978, where the Board found that probable cause existed that Ware had violated two conditions of parole: namely, the condition that he obey all the laws and a special condition that he not associate with known felons. Ware was then remanded to the Maine State Prison pending final disposition of the parole revocation proceedings.

Hearings were scheduled for December 28, 1978, January 18, 1979 and February 15, 1979, but were continued at Ware's request, the last continuance being granted and the hearing postponed until final disposition of the burglary charge. On March 12, 1979, Ware pleaded guilty to the offense of burglary and was sentenced to three years at the Maine State Prison. A final parole revocation hearing was held on April 19, 1979, but Ware refused to appear. At the hearing, the Board purported to revoke Ware's parole from the robbery sentence, finding the burglary conviction to be conclusive evidence of a violation of the conditions of parole.

Ware subsequently filed a petition for post-conviction relief. A hearing was held on March 20, 1980, in Superior Court, Knox County, on the propriety of the parole revocation proceedings. Sumner Glazier, secretary to the Board, was the only witness. He testified that because Ware did not appear at the April 19 hearing, normal procedures were not followed; that although the Board met, the hearing on Ware's case was not recorded on tape, and no official record was made of the vote on revocation. Moreover, the form used to indicate the Board's disposition of the matter was not the form

ordinarily employed to indicate parole revocation. On these facts, the presiding justice found that Ware's parole from his prior robbery sentence was never properly revoked, "there being no record of and Petitioner not being notified of a specific adjudication of a violation, nor of a specific disposition in accordance with statute and regulations promulgated by the Parole Board." Accordingly, the Superior Court Justice ordered that the time served between December 8, 1978, and March 12, 1979, be credited toward Ware's burglary sentence, resulting in his immediate release under *Boutot v. State*, Me., 380 A.2d 195 (1977). Ware had completed serving his prior robbery sentence on December 12, 1980, and had only to complete what remained of his three-year burglary sentence at the time of the hearing of Ware's petition for post-conviction relief.

The regulations that the Board was found not to have complied with were promulgated by the Board itself after the United States Supreme Court decided *Morrissey v. Brewer*, 408 U. S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U. S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In those decisions, the Supreme Court outlined certain minimal procedural requirements with which parole and probation revocation proceedings must comport in order to satisfy due process. Accordingly, to satisfy the standards enunciated in *Morrissey* and *Scarpelli*,[1] the Board promulgated a set of regulations to govern parole revocation proceedings brought under the former 34 M.R.S.A. § 1675.[2] Those regulations contemplate a two-stage revocation hearing by the Board: first, an adjudicatory hearing, at which the Board decides whether the parolee has violated any of the conditions of his parole, and, second, if a violation is found, a dispositional hearing at which the Board decides on the proper disposition of the case.[3] Only on compliance with this two-stage process, may parole be properly revoked pursuant to the Board's regulations.

The presiding justice found that the Board did not make a specific disposition of Ware's case as the regulations require. On appeal, the State argues that the finding is clearly erroneous. First, the State contends that a specific dispositional hearing was unnecessary in view of a provision of former 34 M.R.S.A. § 1675 that parole shall be revoked if a violation of parole is found.[4]

1. The "Statement of Purpose" which prefaces the Board's regulations reads as follows:

> These procedures are designed to comply with the letter and spirit of *Morrissey v. Brewer*, 408 U. S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972) and *Gagnon v. Scarpelli*, 411 U. S. 778 [93 S.Ct. 1756, 36 L.Ed.2d 656] (1973) in providing procedural fairness to parolees charged with violations of parole conditions. They constitute a first approximation of the Board's perception of procedural fairness. The Board intends to revise them as experience and legal requirements dictate.

2. Repealed by P. L. 1975, ch. 499, § 71, effective May 1, 1976.

3. The Board's regulations provide:
> VI. Dispositional Hearing.
> The Parole Board will receive official records and oral and written statements:
> 1) from the parolee and his counsel; and
> 2) from other persons having information relevant to the case.
> The Board will receive records and statements relevant to:
> 1) The circumstances of any new conviction;

> 2) The circumstances of a non-criminal violation of parole conditions;
> 3) Dispositional alternatives;
> 4) The parolee's personal circumstances; and
> 5) The wisest disposition of the parolee's case.
> The range of dispositional alternatives include:
> 1) Sustaining parole;
> 2) Revoking parole and
> a) Denying time served, or
> b) Denying the parolee a specified length of time before reconsideration of his case by the Board; or
> 3) Discharging the parolee to begin serving a new sentence, either immediately or after a specified length of time.

4. In pertinent part, 34 M.R.S.A. § 1675 provided as follows:
> When a parolee violates a condition of his parole or violates the law, the director may issue a warrant for his arrest. A probation-parole officer, or any other law enforcement officer within the State authorized to make arrests, may arrest the parolee on the warrant and return him to the institution from

In effect, the State asks us to treat the pertinent provisions of section 1675 as self-executing. We decline to do so. The Superior Court was correct in requiring the State to show that the Board had, in fact, heard and determined whether a parole violation had occurred and, if so, what disposition should be made.

Second, the State argues that even if a dispositional hearing was required in the present case, the Board made such a disposition. This, the State claims, is evidenced by the notification sent to Ware indicating that it had "denied full time his parole."

 Under M.R.Civ.P. 52(a), review of the factual findings of the justice below is governed by the clearly erroneous standard. Factual findings are not clearly erroneous unless they are not supported by credible evidence. *Butler v. Inhabitants of Tremont*, Me., 412 A.2d 385, 387 (1980). Applying that standard, we cannot say that the findings of the Superior Court were clearly erroneous.

The evidence consisted solely of the testimony of Sumner Glazier and various documents in the record. There is no official record of the parole revocation proceedings, the only evidence of the procedure followed at the hearing being the testimony of Glazier, which was based solely on his memory and personal notes. Neither Glazier's testimony nor any of the documents in evidence compelled the presiding justice to conclude that the Board made a specific dispositional determination in Ware's case. The only indication of a disposition is the notation on a form entitled "State Probation and Parole Board Report" that parole was being "denied full time." Even that form was not the one normally employed by the Board for disposition of its cases. In sum, the Superior Court was justified in concluding that the Board had not given consideration to the disposition of Ware's

case under section 1675 and the Board's own procedural regulations. We hold, therefore, that there is sufficient credible evidence in the record to support the presiding justice's finding that the Board failed to make a specific disposition as required.

The entry is:

Judgment affirmed.

All concurring.

which he was paroled. At its next meeting at that institution, the board shall hold a hearing. The parolee is entitled to appear and be heard. If the board, after hearing, finds that the parolee has violated his parole or the law, it shall revoke his parole, set the length of time he shall serve of the unexpired portion of his sentence before he can again be eligible for hearing by the board, and remand him to the institution from which he was released . . . .